UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DELORES BECK-PATTERSON, | CASE NO. 1:14CV864 |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| v. | Magistrate Judge George J. Limbert |
| CAROLYN W. COLVIN[1], ACTING COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendant. | |

Delores Beck-Patterson ("Plaintiff"), seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case with prejudice.

## I. PROCEDURAL AND FACTUAL HISTORY

Plaintiff applied for DIB on May 6, 2011, alleging disability since July 1, 2006. The SSA denied Plaintiff's applications initially and on reconsideration. ECF Dkt.#10, Transcript of proceedings ("Tr.") at 69-99. Plaintiff's date last insured is December 31, 2011. Tr. at 19. Plaintiff requested an administrative hearing, and on September 6, 2012, the ALJ conducted an administrative hearing and accepted the testimony of Plaintiff, Gene Burkhammer, a vocational expert, and Herschel Goren, M.D., a medical expert ("ME"). Tr. at 38-69. On December 27, 2012, the ALJ issued a Decision denying benefits. Tr. at 19-36. Plaintiff appealed the Decision, and on February 22, 2014, the Appeals Council denied review. Tr. at 1-7.

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

On April 22, 2014, Plaintiff filed the instant suit seeking review of the Decision. ECF Dkt. #1. On September 8, 2014, with leave of Court, Plaintiff filed a brief on the merits. ECF Dkt. #13. On October 8, 2014, Defendant filed a brief on the merits. ECF Dkt. #14. No reply brief was filed.

**II**.    **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffers from fibromyalgia, spinal scoliosis, and arthritis of the lumbar spine, the cervical spine, and the knees, which qualified as severe impairments under 20 C.F.R. §404.1520(c). Tr. at 21. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526 ("Listings"). Tr. at 23.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined by 20 C.F.R. § 416.9679(a)[2], specifically that she can lift and carry up to twenty pounds occasionally and ten pounds frequently. In an eight-hour workday, Plaintiff can stand and/or walk for two hours and sit for six hours. However, she cannot climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs. Plaintiff cannot kneel or crawl. She can occasionally stoop and crawl. Tr. at 24.

The ALJ ultimately concluded that Plaintiff is capable of performing her past work as a medical secretary Tr. at 29. As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits.

**III.**    **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

---

[2]Sedentary work "involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.    STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the

-3-

record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V. ANALYSIS

Plaintiff advances two related arguments in this appeal: Plaintiff contends that the ALJ erred when he did not give controlling weight to the October 31, 2012 letter of Plaintiff's treating pain management physician, Sami E. Moufawad, M.D., in which Dr. Moufawad opined that Plaintiff is disabled. Plaintiff argues similarly that the ALJ erred in giving great weight to the opinion of the M.E., whose review of the record did not include the Dr. Moufawad's October 31, 2012 letter.

### A. Medical history

Since 2006, Plaintiff has undergone regular treatment for chronic, diffuse pain. Treatment records from Ghai C. Lu, M.D., her primary care physician, document Plaintiff's complaints of neck and back pain. Tr. at 537. On January 30, 2006, Dr. Lu opined that Plaintiff could not lift more than twenty pounds and could not stand longer than thirty minutes. Tr. at 449. He cited Plaintiff's hip and back pain as the cause of her restrictions.

Matthew E. Levy, M.D., an orthopedist, examined Plaintiff on January 15, 2008, on referral from Dr. Lu. Tr. at 322. Dr. Levy noted normal gait, lumbar tenderness with full range of motion in the spine, intact sensation, equal reflexes, and full motor strength. Tr. at 322. Dr. Levy noted that x-rays of the cervical spine showed low-grade degenerative changes, and x-rays of the lumbar spine showed moderate to advanced degenerative changes. Tr. at 322. Dr. Levy diagnosed degenerative joint disease of the cervical and lumbar spine. Tr. at 322. He recommended anti-inflammatory medication and physical therapy. Tr. at 322. Following physical therapy, Plaintiff reported some improvement in her symptoms in April 2008; she had good motion in all planes in the neck and back and normal neurological findings. Tr. at 324.

In the spring of 2008, Plaintiff reported increased knee pain. Tr. at 324-26. X-rays of the knees were unremarkable; however, magnetic resonance imaging of the knees showed degenerative medial meniscal tears in both knees. Tr. at 328, 336. In May of 2008, Plaintiff was walking well in spite of the reported pain. Tr. at 328. Dr. Levy discussed arthroscopy with Plaintiff, however, there is no indication that this procedure was performed. Tr. at 328. Plaintiff participated in physical therapy for knee pain, and progress notes indicate improvement in her symptoms, including a reduction in her pain. Tr. at 362. Plaintiff sought emergency treatment for back pain on May 30, 2008, where she reported pain of a few days' duration. Tr. at 414. The attending physician prescribed Ultram for pain. Tr. at 416.

Sami E. Moufawad, M.D. treated Plaintiff from September 2008 through August 2012 . Tr. at 465-511, 758-59, 768-77. At the initial visit, Plaintiff reported that physical therapy had been not been effective in relieving her neck pain. Tr. at 467. She also reported ongoing back and knee pain as well as diffuse joint pain. Tr. at 467. Dr. Moufawad recommended a home exercise program and prescribed narcotic pain medications and a TENS unit for pain control. Tr. at 468, 470. He also administered steroid injections for cervical and lumbar spine pain. Tr. at 373, 385, 407, 787.

Dr. Moufawad's progress notes indicate that Plaintiff reported ten to twelve hours of relief of her symptoms with the steroid injections. Tr. at 474, 478. Plaintiff also reported improvement in her symptoms with pain medication and the TENS unit. Tr. at 474. Dr. Moufawad's progress notes show that Plaintiff had periods of exacerbation of pain, but she generally reported that her pain management regimen enabled her to function, perform activities of daily living and sleep uninterrupted by pain. Tr. at 463, 488, 490, 482, 759, 774, 792.

Plaintiff returned to Dr. Moufawad on February 4, 2010, Tr. at 480-481, and again on May 6, 2010, at which point the doctor recommended more injections. Tr. at 482-483. On June 30, 2010, Dr. Moufawad reported that Plaintiff was considering disability due to the severity of her pain and her limited activities of daily living. Tr. at 485.

Lisa P. Iannuzzi, M.D., a rheumatologist, examined Plaintiff on July 13, 2010, upon referral from Dr. Lu. Tr. at 446-47. Dr. Iannuzzi's examination findings included mild lumbar scoliosis, tenderness in the right shoulder, bony enlargement of the interphalangeal joint of the right thumb,

mild bony enlargement of the left knee, positive trigger points, and intact strength, sensation and reflexes. Tr. at 446-47. Dr. Iannuzzi ordered laboratory testing, which did not reveal any inflammatory arthritis. Tr. at 447. Dr. Iannuzzi diagnosed osteoarthritis of the cervical spine and left knee and fibromyalgia with chronic low back pain and generalized aching of the hands and feet . Tr. at 447. She recommended that Plaintiff walk for exercise three to five times a week, and she prescribed a trial of Savella. Tr. at 447.  On August 25, 2010, Plaintiff complained of pain and fatigue. Dr. Moufawad prescribed Lyrica (discontinuing Savella) and Pennsaid for osteoarthritis affecting her hands. Tr. at 487.

Dr. Moufawad continued Plaintiff's treatment on January 5, 2011 and March 7, 2011. Tr. at 490-491, 492-493. On July 3, 2011, Plaintiff had deep neck pain associated with muscle spasm and neck tightness, low back pain with radiation to the lower limb, knee pain and occasional swelling, and fatigue. Tr. at 463. Medication, exercise and a TENS unit was the recommended treatment. Tr. at 463-464. On May 17, 2011, Dr. Moufawad found that Plaintiff had knee pain, which was made worse with loading and walking.  Dr. Moufawad also acknowledged that Plaintiff's neck pain had improved and now allowed her to perform her activities of daily living, but was made worse with extension and twisting, and low back pain with intermittent radiation to the lower limb. Tr. at 495.

Melissa Korland, Ph.D., performed a consultative psychological evaluation on June 28, 2011. Tr. at 453. Plaintiff claimed she was unable to work due to chronic pain from fibromyalgia and osteoarthritis. Tr. at 453. Dr. Korland noted that she presented as mildly depressed and endorsed symptoms of crying spells (although not excessive), low energy, lack of interest, and feelings of guilt, helplessness and worthlessness. Tr. at 456-457. Mental status testing revealed no deficits in attention, concentration, abstract thinking, fund of knowledge or judgment. Tr. at 456. Plaintiff was oriented in all spheres and denied having anxiety. Tr. at 456. She could complete light household chores, go grocery shopping, and keep up her personal hygiene. Tr. at 457.

Dr. Korland diagnosed adjustment disorder with depressed mood. Tr. at 457. She determined that Plaintiff had no limitations on her ability to relate to others and to understand, remember and carry out instructions, but had mild limitations in her ability to maintain attention, concentration, persistence and pace and to withstand the stresses of daily work. Tr. at  458.  The State Agency

psychological consultants who reviewed the medical evidence determined that Plaintiff did not have a severe mental impairment, based largely on Dr. Korland's opinion and Plaintiff's reports regarding her activities of daily living and symptoms. Tr. at 75-76, 89-92.

William Bolz, M.D., a state agency medical consultant, reviewed Plaintiff's case file on July 27, 2011. Tr. at 69-80. Dr. Bolz determined that Plaintiff retains the capacity for light work with no climbing of ladders, ropes, or scaffolds, only occasional climbing of ramps or stairs, kneeling, crouching, or crawling, and no more than frequent stopping, and avoidance of concentrated exposure to extreme cold and all exposure to workplace hazards. Dimitri Teague, M.D., a state agency medical consultant, reviewed Plaintiff's case file on February 6, 2012 and affirmed Dr. Bolz's opinion. Tr. at 82-97.

On October 6, 2011, Dr. Moufawad evaluated Plaintiff and his impression was right cervical facets pain with dysfunction at C4-5, C5-6, and C6-7, lower back pain with sciatica, knee osteoarthritis, and myofascial pain in the lower back and lower cervical area. Tr. at 297. Dr. Moufawad continued Plaintiff's narcotic pain medication and TENS unit. Tr. at 297. Dr. Moufawad noted that Plaintiff's pain continued and that she would wake at night to change position to get pain relief. Tr. at 297. Plaintiff's low back pain also radiated to her leg and reached her foot. She also experienced numbness. On December 5, 2011, Dr. Moufawad reported that Plaintiff's activities of daily living were limited, but that she can perform them if on medication. Tr. at 759.

Plaintiff continued to treat with Dr. Moufawad into 2012. Tr. at 772. On March 28, 2012 physical examination revealed multiple trigger points around the lower neck area. Tr. at 774. Dr. Moufawad reviewed Plaintiff's different types of pain, which included facet pain, as well as pain in her joints and ligaments, and myofascial pain. Tr. at 775. Cervical nerve injections were performed on April 18, 2012 and April 23, 2012 and Dr. Moufawad diagnosed right cervical facet pain with dysfunction and cervical spondylosis. Tr. at 776, 778. On May 14, 2012, Dr. Moufawad reported that Plaintiff's back pain was not responding to conservative treatment. Tr. at 787. A fluoroscopy with diagnostic blocks was performed and Dr. Moufawad diagnosed lumbar radiculitis and lumbar disc displacement. Tr. at 787, 792. On July 5, 2012, Dr. Moufawad's diagnosis remained

right cervical facets pain with dysfunction at C4-5, C5-6, and C6-7, lower back pain with sciatica, knee osteoarthritis, and myofascial pain in the lower back and lower cervical area. Tr. at 793.

On August 28, 2012, Plaintiff presented to the emergency department with complaints of back pain and that she had run out of Vicodin. Tr. at 795-796. She ambulated to the treatment room without difficulty and was in no apparent distress. Tr. at 797. On August 30, 2012, Plaintiff saw Dr. Moufawad for increased back pain. Tr. at 801.

Eulogio R. Sioson, M.D., performed a consultative medical examination on February 2, 2012. Tr. at 763. Plaintiff reported a history of neck, hack and joint pain, hypertension and depression. Tr. at 763. She walked normally without an assistive device and got on and off the examination table. Tr. at 763. Dr. Siosin noted some difficulty balancing with heel/toe walking. Tr. at 763. Plaintiff reported she did some household chores, and was able to dress, groom, shower, button clothes, tie, and grasp (with some pain). Tr. at 763. Medication reduced her pain levels. Tr. at 763. She had not been hospitalized for depression and had no suicidal thoughts or attempts. Tr. at 763. Examination findings included minimal tenderness in the knees with mild bony hypertrophic changes, pain with range of motion in the left hip, minimal neck and low hack tenderness, negative straight leg raise testing, intact sensation and normal reflexes. Tr. at 764. An x-ray of the right knee demonstrated degenerative changes in the right knee but no joint effusion. Tr. at 761. Dr. Sioson diagnosed neck, back and joint pain, hypertension and depression. Tr. at 764. He opined that Plaintiff was limited to light or sedentary work. Tr. at 764.

At the September 6, 2012 hearing, medical expert Dr. Goren provided a summary of the medical evidence and noted degenerative changes in the cervical and lumbar spine and in the left knee. Tr. at 59. He noted that an MRI study of the knees was abnormal and an electromyogram of the lower extremities was abnormal. Tr. at 59. Dr. Goren opined that Plaintiff retained the capacity for a range of sedentary work. Tr. at 60. He stated that the evidence indicated satisfactory range of motion in the neck and he saw no basis for work limitations related to neck range of motion. Tr. at 61. Likewise, Dr. Goren saw no need for a requirement that Plaintiff alternate between sitting and standing throughout the workday. Tr. at 61.

Dr. Goren completed a questionnaire regarding Plaintiff's work capacity on September 26, 2012. Tr. at 803. He determined that Plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently, sit for six hours of an eight-hour workday and stand and/or walk for two hours of an eight-hour workday. Tr. at 804. Dr. Goren stated that Plaintiff could not climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. Tr. at 804. Dr. Goren opined that she had no further exertional, postural, manipulative or environmental limitations. Tr. at 804.

In an October 31, 2012 letter, which was written after the administrative hearing in this case, Dr. Moufawad reported that he had treated Plaintiff for chronic pain associated with fibromyalgia and osteoarthritis. Tr. at 824. He stated that she also suffered from depression. Tr. at 824. Dr. Moufawad noted that her symptoms also included fatigue, weakness, joint pain, back pain, headaches, memory problems and impaired concentration. Tr. at 824. He stated that treatments, including anti-depressants, provided no benefit. Tr. at 824. Dr. Moufawad wrote, "Restricting activity is the only way to prevent exacerbation of her symptoms." Tr. at 824. He explained that she must be able to get up and stretch or move about with sitting for prolonged periods. Tr. at 824. He additionally stated that she was limited in her ability to sit, stand and walk for prolonged periods, and to focus, understand, carry out and remember instructions. Tr. at 824. Dr. Moufawad stated that her ability to "sustain any activity for even a few hours a day is unpredictable." Tr. at 824. He noted that her activities of daily living were markedly limited. Tr. at 824. Dr. Moufawad concluded that she was "100% disabled" and that work is "out of the question." Tr. at 825.

### B.     Hearing testimony

At the hearing, Plaintiff, who was fifty-one years of age on the alleged onset date, and fifty-six years of age when her insurance status expired, testified that she is 5'2" and 176 pounds. Tr. at 41. Plaintiff drives a car two or three times per week. Tr. at 42. At the time, she was seeing two physicians regularly, Dr. Lu (every three months) and Dr. Moufawad (every two months). Tr. at 45-46. Plaintiff was prescribed Elavil (anxiety) and Percocet (pain), as well as medication for her high cholesterol and high blood pressure. Tr. at 46. She testified that Percocet made her drowsy and she loses focus.   Plaintiff described her neck and lower back pain as the most pronounced pain she

-9-

experiences.  The pain in her neck comes and goes, but she experiences it at least half of each day. Tr. at 47. Her neck pain is mostly moderate, but some days it is severe.  Her back pain is exacerbated by sitting for long periods of time.  Tr. at 47-48.  Her back pain ranges from five to seven on a scale of one to ten, and lasts about seventy-five percent of each day.  Tr. at 48. Plaintiff's back pain radiates into her left leg.  Plaintiff testified that her physician suggested back surgery, but that she is afraid to undergo surgery.

Plaintiff's knees are "achy" most days, and swell a couple of days a week. Tr. at 56. Plaintiff receives injections in her knees to reduce inflamation and she elevates her legs for about thirty minutes when they are swollen.  Plaintiff also experiences pain in her hands, legs, arms, wrists, and joints. Tr. at 49. She also experiences severe headaches approximately five times a day.  She takes a "Percocet and a half" for her headaches, which relieves her pain on some days.  Plaintiff takes anxiety medication when she cannot get rid of her pain.  Tr. at 51.

Plaintiff testified that she is more forgetful since she began taking prescription pain medication.  Tr. at 52.  She also gets moody at times.  Plaintiff testified that she is incapable of performing secretarial work because her concentration is "off" due to her pain and her medication. Tr. at 58. She also cannot stay seated or hold her neck in the same position for a long period of time.

Plaintiff can walk for ten or fifteen minutes and can sit for twenty to thirty minutes at a time. She wears a band for back support approximately twice a week. Tr. at 53. She can go up and down steps but she experiences pain. Plaintiff can bend over and touch the ground, but it is painful.  She testified that she can lift four or five pounds. Later in her testimony, Plaintiff stated that she could walk for twenty or thirty minutes, but it hurts. Tr. at 54.

When Plaintiff's pain is controlled, she can vacuum and put dishes in the dishwasher.  Tr. at 54.  Otherwise, her husband does most of the household chores.  Plaintiff will go to the store once a week to pick up one or two items. Tr. at 55. She attends church when her pain is not severe.  She watches television and reads, when she can stay focused.  Tr. at 56.

### C. The ALJ's decision

In reaching the conclusion that Plaintiff could perform sedentary work, the ALJ gave great weight to the opinion of Dr. Goren because Dr. Goren reviewed the record up to Exhibit 23F and

-10-

because his opinion was consistent with the evidence as a whole, as well as Plaintiff's reported activities. Tr. at 28. The ALJ concluded that the sedentary RFC accommodates Plaintiff's chronic back and knee pain by excluding prolonged standing and walking, with additional postural limitations. The ALJ further concluded that the sedentary classification was consistent with Plaintiff's demonstrated ability to care for her personal needs, perform light household chores, drive and shop.

The ALJ gave less weight to the opinion of Dr. Moufawad because Dr. Moufawad's treatment notes, and the record as a whole, did not support his dire conclusions about Plaintiff's limitations. Tr. at 27. Specifically, the ALJ noted that Dr. Moufawad's treatment records repeatedly documented Plaintiff's ability to perform her activities of daily living and sleep without interruption with the aid of her medication. Further, Dr. Moufawad's medical notes did not contain any reports of memory problems or impaired concentration nor the inability to sustain any activity, even sedentary activities.

### D.   **Opinion evidence**

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers, supra*, at 243 (6th Cir. 2007. If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

On the other hand, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' " *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013. The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. *Id.* citing 20 C.F.R. §404.1527(c). Other factors "which tend to support or contradict

-11-

the opinion" may be considered in assessing any type of medical opinion. *Id.* citing §404.1527(c)(6).

Finally, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and his opinion is supported by substantial evidence. See 20 C.F.R. § 404.1545(a)(2); see also *Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir.2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir.2010) (quotation omitted).

A medical source's statement on an issue reserved for the Commissioner, such as an assertion that a claimant is "disabled" or "unable to work," is a legal conclusion and not a medical opinion. 20 C.F.R. § 416.927(e). Such statements are not entitled to any special significance. 20 C.F.R. § 416.927(e)(3). "The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.2004).

In other words, the "[r]esponsibility for deciding residual functional capacity rests with the ALJ," not a physician. *Vlach v. Comm'r of Soc. Sec.*, No. 12-2452, 2013 WL 3766585, at *12 (N.D. Ohio July 16, 2013) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)); accord 20 C.F.R. § 416.946(c) (the ALJ "is responsible for assessing your residual functional capacity"); *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide."). To determine an individual's RFC, the Commissioner will review "all of the relevant medical and other evidence" in the record, which may include, but is not limited to, medical source opinions. 20 C.F.R. § 416.945(a)(3).

Here, the ALJ gave little weight to the treating physician's opinion because he found that it was not supported by the record.  For instance, Plaintiff testified at the hearing that she would be unable to perform full-time secretarial work because she struggles with focus and concentration. However, Dr. Moufawad's treatment notes do not contain any complaint regarding the side effects of her medication or generalized complaints about memory and focus. Tr .at 28.  In fact, Dr.

-12-

Moufawad's treatment notes contain repeated statements by Plaintiff that she suffered no side effects from her prescribed medications. Tr. at 29. Likewise, Dr. Moufawad's treatment notes establish that Plaintiff regularly presented as alert, awake, and oriented during office visits. Tr. at 29. The ALJ gave little weight to Dr. Moufawad's opinion regarding Plaintiff's physical limitations based upon Plaintiff's documented ability to care for her personal needs, prepare simple meals, perform light household chores, shop, manage her finances and drive. Tr. at 29. Dr. Moufawad's treatment notes establish that Plaintiff's activities of daily living were sometimes limited by her pain, but that her medication allowed her to complete her daily tasks.

Plaintiff contends that the ALJ only addressed Dr. Moufawad's October 31, 2012 opinion, and did not address any of the doctor's early opinions. ECF Dkt. #13 at p. 17. Plaintiff observes that there is "a great deal of consistency" in the early opinions. ECF Dkt. #13 at p. 17. However, Plaintiff offers no citation to the record to support her broad conclusion.

The Sixth Circuit has recognized that inconsistencies between proffered restrictions and the underlying treatment records are "good reasons" for discounting a treating source's opinions. See, e.g., *Hill v. Commissioner*, 560 F. App'x 547, 549-50 (6th Cir.2014); *Fry v. Commissioner*, 476 F. App'x 73, 75-76 (6th Cir.2012). Therefore, the undersigned recommends that the Court find no violation of the treating physician rule.

Turning to the related argument, Plaintiff contends that Dr. Goren's opinion should not have been afforded great weight because he did not review Dr. Moufawad's October 31, 2012 report. The primary function of a ME is to explain the medical terms and findings in complex cases in terms that the ALJ, who is not a medical professional, may understand. *Richardson v. Perales*, 402 U.S. 389, 408, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1972). The Commissioner's regulations provide that an ALJ "may also ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. § 404,1527(f)(2)(iii). The opinion of a medical expert constitutes substantial evidence when it is detailed and consistent with other medical evidence in the record. *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir.1989).

-13-

Here, Dr. Goren's review of the record evidence led him to conclude that Plaintiff was capable of performing sedentary work, with some additional limitations. The ALJ reached the same conclusion, having found that Dr. Moufawad's October 31, 2012 opinion was at odds with the medical evidence in the record. Because Dr. Moufawad's opinion was contravened by his own treatment notes, it is unlikely that Dr. Goren's opinion would have been influenced by Dr. Moufawad's unsupported conclusions. Moreover, Dr. Goren's opinion constitutes substantial evidence because it is consistent with the record evidence. Accordingly, the undersigned recommends that the Court find that the ALJ did not err in assigning great weight to the opinion of the M.E.

## VI. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case with prejudice.

DATE: April 6, 2015

                                */s/George J. Limbert*
                                GEORGE J. LIMBERT
                                UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).